The case on the count is United States v. Lingat Good morning, Mr. Mohamed. I see you reserved two minutes for rebuttal. I'm just going to wait one second because some people are clearing out. All right, you can begin whenever you're ready. Good morning, Your Honors. My name is James Mann, M-A-H-O-N. I am a shareholder in Becker, New York, P.C., and we are counsel to Joe Lingat. To my left is my colleague, Samantha Lesser, who is on the brief. It is our privilege to represent Joe Lingat in this appeal. Mr. Lingat was the in-house bookkeeper slash accountant for Moyshe Moving Inc. His duties were essentially administrative, no power to sign checks, no power to pay taxes, no power to utilize monies left over from the various labor companies. All power resided with his superiors, the very people who testified against him after receiving cooperation agreements. He was convicted of one count of 18 U.S.C. 371. The operative language of the statute is conspiracy to defraud the United States. Two Supreme Courts in dicta suggested that this statute could be interpreted to include obstruction of the administration of federal law. It's Haas v. Hinkle and Hammer-Schmidt. In 1957, the Second Circuit in United States v. Klein applied this dicta to the Klein conspiracy to create the Klein Conspiracy Doctrine. So I get that what the text would mean on its face. So even if you put aside the precedent, it does seem like the most clear – maybe the most clear meaning of defraud the United States would be to obtain money or property from it. Maybe at a second level you might obtain some – you trick the government into losing out on something else to which it's entitled, like effectuating its policies. And then it's sort of the third best to say it's like any obstruction of any government activity, even if the government isn't injured, which is the Klein Conspiracy Doctrine, right? I would agree with that. But in this case, your client did conspire to defraud the United States of money or property, right? So like wouldn't the conduct be covered by even the most textual reading of the statute? Thank you for asking me that, Toronto, because that's not what he was accused of. That's not what the jury instructions asked the attorney. No, I know. I understand. So he engages in a conspiracy to avoid paying taxes that the government is owed. I understand that the jury was instructed that you don't have to show that the government lost out on property. But even if we were to say – and we don't The jury should have instructed that you do need to determine that the government missed out on money and property, or at least that an object of the conspiracy was for the government to miss out on money or property. Wouldn't it be a harmless error because the evidence here showed that that was the objective? On the contrary, Your Honor, because if I had been presented with that theory, I might have put in a completely different defense. And what would that have looked like? Pardon me? What would that defense have looked like? Well, first of all, Your Honor, the defense that we argued was that he simply was not a member of the conspiracy, that his duties were administrative, that he had no power. Now remember, Your Honor, I'm a tax controversy lawyer. When I look at what was really at issue here, which are payroll taxes, the first question I look at as a tax controversy lawyer is who had the power to pay the taxes? And you know what? There is – not only is there no evidence that Mr. Lingott had that power, it was precisely proven that he didn't. As a matter of fact, the first – Okay, but the question is, is he part of a conspiracy that – Well, part of a conspiracy – you know, the law of conspiracy, at least as it was explained to the jury, was that a person could be – see what's going on, but not actually join the conspiracy, even though he is instructed to do things that – Well, that's a different question. And that's the problem. So now you're not challenging the Klein Conspiracy Doctrine. Now you're just saying that there was some other error on the way the jury was instructed about conspiracies in general. I specifically did not, Your Honor, do anything relating to the jury instructions, et cetera, et cetera. Judge Viscato is a brilliant jurist, and although she thinks that I'm brazen for raising this argument – She thinks you're what? It's nonetheless, Your Honor, we didn't have a problem with the jury instructions per se. We had a problem – With the Klein Conspiracy Doctrine. With the Klein Conspiracy Doctrine. Can I just ask you, though, then about our precedent? Not only is Klein our precedent, but in Copeland, in Attila, as the government cites, we've repeatedly, despite these types of arguments being made that you're making, saying this is the binding precedent in this court. You cite this recent Supreme Court decisions on other statutes, and you're suggesting that somehow some interpretation of a different statute alters decades of precedent. So how can that be? I would like to address that, Your Honor. Interestingly, the argument that I raise here, okay, which is that Code Section 7212 and 7214 of the Internal Revenue Code are exactly what Congress decided. I emphasize Congress decided when they decided to criminalize obstruction of the administration of the tax law. That argument has never been raised before. And why? Probably because this is the first time that a tax controversy lawyer is sitting here arguing rather than a white-collar criminal lawyer. It probably hasn't been raised before because there's also decades of binding precedent that say Congress passes substantive laws all the time, and they pass conspiracy laws to go along with those. And we've said over and over again, whether or not one is charged and the other is not doesn't matter. Could I address that, Your Honor? That's why I'm asking you. I'm going to ask you, I'm going to start, since I'm an old man. If you look at the government's brief, and you look at their table of authorities, you will find that although they cite Code Section 7212A, they do not talk about, nor do they cite, 7214. Why? 7214 specifically criminalizes defrauding the United States, it's the very language of Code Section 371, but limits it to employees of the United States government. So the legislature, the Congress, in its wisdom, decided to put guardrails on this concept of obstructing the administration of the tax laws. Those guardrails are embedded in the Internal Revenue Code. So therefore, Your Honor, to discuss conspiracy and to say, well, conspiracy is different, well, they dealt with conspiracy, but what they said is, we're not going to let you do conspiracy relating to obstruction of the administration of the tax laws or various criminal provisions of the code unless- Unless you're an employee of the government? Ah. And so what's the language in 7214A that is about, oh, who conspires or colludes with any other person to defraud the United States? Yes. But since that statute applies to an officer or employee of the United States who's acting in connection with the revenue law, why couldn't Congress have separate provisions that say it's a special kind of crime if you're an officer of the United States who's supposed to administer the revenue law who's defrauding the United States, and then there's a general conspiracy statute that applies to other people? Your Honor, exactly. But Congress chose not to. There could be that. They could have. They could have actually had a conspiracy law that echoed 371, specifically in the code, applying to people like Mr. Lingott, and then I wouldn't be here. But they didn't. But there already is that, right? And that's sort of the longstanding interpretation of 371, right? Well, the point of the matter is, Your Honor, that when the Klein Conspiracy Doctrine was created, okay, in 1957, when even I was young, okay, when the Klein Conspiracy Doctrine was created in 1957, it dealt with criminal behavior that was talked about in the 1939 code. These were 1947, 1948 criminal acts. The 1954 code, and by the way, that 39 code did not have 7212, did not have 7214. They were only put into the law in 1954. They did not apply. So what you're suggesting, though, is that when Congress adopted the later statutes that you're saying are more specific, it did so against the backdrop of the expansive interpretation of 371. So isn't that a point, you know, against the argument you're making here, because it suggests that Congress didn't want to displace it. It, like, thought that the new statute could exist alongside the expansive interpretation of 371. No, because before Klein, okay, in 1957, the 371 had never been utilized in a tax case. So that in 1954, when they took care of this and they criminalized this particular behavior, specifically encoding it into the code, okay, Klein didn't exist. All right. I get that. Thank you. So that's where I'm coming from. Thanks. Your time's up, but you can cover the rest. If you want to cover the other issues, you can do that in your rebuttal. All right. Thanks, Mr. Mann. We'll hear from the government. Mr. Capozzi. Good morning, Your Honors. May it please the Court, I am Timothy Capozzi, and I represent the government. In this case, I also represented the government at trial. Your Honors, the appellant participated in a long-running scheme to defraud the IRS of over $7 million, picking up on the point that Judge Menasche began with. This is not a reflection of an aggressive prosecutorial reach of a use of Section 371. This is a bread-and-butter defrauding of the IRS, in which instance the IRS, in fact, suffered losses of approximately $7 million. The evidence was overwhelming that the appellant participated in that conspiracy. By serving as essentially the nerve center of an accounting department that created false records to support the paying of laborers' cash wages off the books to evade federal payroll taxes. So what about Mr. Mann's argument that even putting aside whether you're relying on an expansive interpretation of 371, if Congress has specific statutes that govern obstruction of tax collection or even a conspiracy to defraud the United States in the context of revenue collection, you should be required to proceed through those statutes than to rely on 371? First of all, Your Honor, I think the response is there is binding precedent from the Supreme Court and subsequently in the Second Circuit over the course of over a century at this point, much of that in the past 70 years subsequent to the passage of the statutes that the appellant is citing to. And it's not the case that this court has not ever thought about Section 7212. In fact, in Attila, this court specifically referenced the fact that 7212 arose and was a statute that had a different context, a different history, and a different statutory language and therefore was wholly unrelated to Section 371's defraud clause. And so it's not as if this statute has simply somehow escaped everyone's knowledge for 70 years and therefore appellant has discovered something that should persuade this panel. In addition... What about 7214A? So do those things overlap? So if I'm an employee in the United States and I engage in a conspiracy to defraud, I violate 7214A as well as 371? Am I charged with both? Your Honor, I don't have the elements of 7214 in front of me. Each crime has different elements and it's not at all unusual that an individual can commit certain acts and those acts can satisfy the elements of different criminal statutes. As Judge Bianco noted, it's extremely common in our criminal code for there to be a statute that criminalizes conspiracy. A separate statute that criminalizes substantive offense such as 7212. It's also extremely common for there to be both the possibility of a Section 371 conspiracy as well as, for example, a conspiracy to commit wire fraud. And both of those statutes can be charged and there's nothing unusual about doing so. Do you agree that if the Supreme Court were to consider whether the Klein Conspiracy Doctrine was justified by the text of 371, it would conclude that it's not? If the Klein Conspiracy Doctrine question was before the Supreme Court, what would it say? Your Honor, we don't know because it's never been squarely put in front of the court. The appellant cites different, as I forget which of you recognized, I think it was you, Judge Menasci, that the appellant cites to a collection of cases. The Supreme Court has looked at each statute that's placed in front of it and it has analyzed it and perhaps there is a trend or has been a trend of the narrowing of certain statutes when they've looked at those statutes. But it's clear that 371 has never been put squarely before this Supreme Court and so we don't know what they would do and all we can do in that instance is we have to follow the binding precedent that exists, that's very clear from the Supreme Court cases as well as from the Second Circuit cases. You know, most recently we have, and I may mispronounce it, Casusus, which was focused on the wire fraud statute and again is another case where it wasn't specifically looking at 371, but even in Casusus, Justice... escaping my... the majority opinion, referenced 371 in a sentence or two, but merely to say 371 is a broad statute that criminalizes beyond deprivations of money and property but didn't in any way say that 371 was improper or wrong or that it was addressing 371 and the Supreme Court precedent, which we cite, I think it was the Shalala case, you know, makes the point that the Supreme Court doesn't overrule its precedents sub silencio and so... In fact, it's explicitly said, like it looks to us like there's a trend where they might reconsider its precedents but there still is a precedent they haven't overruled that's on point, we're supposed to follow that precedent. Correct, Your Honor, correct, Your Honor. Your Honor... Just for, you know, academic interest perhaps, so if you were asked whether the text of 371 justifies the fine conspiracy doctrine, what would you say? Well, Your Honor, that section prohibits, you know, quote, to defraud the United States in any manner for any purpose and so that's admittedly broad language. The breadth of that language, we would contend, supports the Supreme Court's conclusion that it was broad enough to include any conspiracy for the purpose of impairing, obstructing, or impeding the lawful function of any department of the government as clarified by Hammerschmidt that it requires some level of deceit. You know, as... If the government doesn't suffer any kind of loss, does it really make sense to say that that's defrauding the United States? Well, Your Honor, this is a conspiracy statute where the crime that it is trying to capture is the agreement. Right, but, you know, isn't the way the fine conspiracy doctrine has been understood is that it is... Oh, I see. So the intention would be to make them lose out on something even if it doesn't materialize and that is consistent with, you know, the way it's written because it's about the agreement. Correct, Your Honor. Correct, Your Honor. Your Honors, I wanted to raise one brief point. Just in re-reviewing the government's brief last night, there was a minor correction I'd like to make in terms of a factual statement that was made in the background section. On page four of the first full paragraph, which begins with the word initially, there's a second sentence that begins, but as the scheme and the number of Manna companies expanded over time, Lingat and co-conspirator Salman Rami Haim, and it goes on, selected nominee owners from their own families. Your Honor, that reference to Lingat should be to the co-defendant at trial, LeMay. It was not Lingat who recruited family members, it was LeMay. I apologize for just identifying it in re-reviewing the brief. We do not rely on that fact at any point in our argument to support our positions and so I don't think it's material here. There was ample evidence of the defendant's participation in the scheme, knowing participation in the scheme, but nevertheless I wanted to make sure that you were aware of it and so you weren't misrelying upon it in your understanding of the trial record. Thank you for bringing that to our attention. If the court has no further questions, we'll rest on our submission. All right, thank you. We'll hear from Mr. Mann and we reserve two minutes for rebuttal. First of all, Your Honor, and this is somewhat off record, but the mere fact that my adversary corrected the record is exemplary of the extraordinary professionalism that he and his team exhibited towards me and the court throughout the trial and I would like that to be appreciated, number one. Number two, Your Honor, I'd like to point out that the real, shall we say what the government is saying is since you decided Klein 70 years ago and since Copeland just couldn't find a way to reverse it even though Judge Cabrera specifically called it a common law crime and hence a violation that you should therefore not do this here. However, no one has actually talked about Jingling Lin, the Department of Justice. Now, it's a case we cite in page 10 of our brief which states that where there's an issue of statutory interpretation and construction, the doctrine of stare decisis can and should be eliminated, should not be utilized. This is statutory construction. That's why I talk about 7212. That's why I talk about 7214. You're saying that our court's precedents that interpret statutes are not binding on future powers? Okay. Let me read this to you. While stare decisis is undoubtedly of considerable importance of a statutory interpretation, the Supreme Court has never applied stare decisis mechanically to prohibit overruling earlier decisions. That's the Supreme Court. No, no. We should not do so either. They're talking about you. The fact that we have failed to follow the plain language of the law of Congress for 10 years does not require that we do so indefinitely. This would place on the shoulders of Congress the burden of the court's own error. Your Honor, that is the reason why I'm saying to you now, okay, if in fact you agree with me that this particular Klein conspiracy doctrine has met its water loop, that you are not constrained by the doctrine of stare decisis, you can correct this error. It does nothing to the interpretation of the tax law or to the enforcement of the tax law because 7212 and 7214 do a spectacular job of it without bringing this up. Well, do they? I mean, 7212 is about obstruction of a particular proceeding, and 7214, as you're saying, is about employees of United States. So actually there isn't a general tax fraud statute. Well, it does. You see, Your Honor, that's what Congress was saying. They were saying this is the criminal behavior that we wish to prohibit, okay? And that's what Marinelli is all about. All right. Okay, and then Attila... Mr. Mann, I think we have the argument. I'm sorry, Your Honor. That's okay. I appreciate your argument today, both sides. And thank you very, very much for your attention, Your Honor, and I really appreciate it.